## The Lake Shore Power Co. *v.* Meyer.

(Decided October 28, 1935.)

*Mr. A. L. Gebhard,* for plaintiff in error.
*Messrs. Newcomber & Parker,* for defendant in error.

Overmyer, J. Walter Meyer, an employee of the Lake Shore Power Company, having been denied compensation by the Industrial Commission for alleged injuries claimed by him to have been received in the course of and arising out of his employment, appealed to the Court of Common Pleas, wherein, upon trial, the jury found in his favor. From the judgment rendered on the aforesaid finding the power company, a self-insurer under the Workmen's Compensation Law, prosecutes error to this court.

The petition in error assigns a number of alleged errors, but the one urged upon this court in the argument and the brief relates to the admission in evidence

of five X-ray skiagraphs alleged to have been taken of claimant's hip joint and spine, the complaint being that proper foundation was not laid to make them competent.

The alleged injury which forms the basis of plaintiff's claim occurred on June 7, 1932, the claim was filed with the Industrial Commission on September 16, 1932, and on January 18, 1933, the claim was disallowed by the commission and the following finding made:

"This day, to wit, January 18, 1933, this claim came on for hearing for consideration of application for adjustment filed by the claimant herein, and the other proof on file, which matters being duly and fully considered by the Commission, it is the finding of the Commission that there is insufficient proof to indicate that the claimant's condition arose out of the alleged injury in this case. Further, that he was not disabled due to the injury."

An application for rehearing was allowed and testimony taken, and the claim was again rejected.

On trial below the only witness who testified for claimant with reference to the X-ray pictures was Dr. Klinger of the Garrett Clinic at Gary, Indiana, and his testimony, if improperly received, would be prejudicial to the power company for the reason that claimant bases his claim on alleged injuries to his hip as a result of a fall on the ground when a shovel handle broke on June 7, 1932, and the undisputed evidence discloses that from November 16, 1931, to about January 20, 1932, claimant was confined to his home, and most of the time to his bed, as the result of getting wet on a hunting trip on November 16, 1931; and that during that time, when he walked at all, it was with great difficulty, as there was soreness in his back and ribs. The power company contends that there is no competent evidence in the record to show that the

injuries complained of were due to the accident of June 7, 1932, as against his illness and difficulties of the preceding November and January, and that therefore the admissibility of the testimony of Dr. Klinger with reference to the X-ray pictures becomes important.

It is true that the rules as to the identification of X-ray pictures have been liberalized by the courts generally, yet it is still required by all courts and authorities that proper identification be made and proper foundation laid for their competency before they may be received. The value of X-ray pictures as evidence depends upon the position of the subject when the exposure is made, the angle of view, the length of time of exposure, the accuracy of the machine, and its correct location with reference to the part to be photographed. The following, as stated in Herzog on Medical Jurisprudence, page 191, is undoubtedly true:

"If the X-ray tube or plate is not in the perfectly proper position, the shadows will be shifted so as to tend to cause wrong interpretation of the resulting picture. * * * Only the X-ray operator who saw how the picture was obtained and therefore knows the position of the patient in relation to the tube and plate, should testify to its correctness."

Above all, it certainly must appear that the pictures offered in evidence are definitely marked and identified as pictures of the person and subject as claimed. The record discloses that Dr. Klinger based his testimony solely on his interpretation of the X-ray pictures, and not on a personal physical examination, and it appears from his testimony that he did not take the five X-ray pictures offered in evidence, that he does not take X-ray pictures, that he did not have charge of the taking of them, that he was in the room when some of them were taken, but could not say which ones, that he did not develop the pictures or

have anything to do with developing them, and was not in the developing room when they were developed.

Some of the pictures bore identification marks showing only that they were taken at the Garrett Clinic, but bore no date or name of the subject taken, while others of the pictures have no identification marks of any kind.

We hold that under the following authorities, and many others of uniform tenor, the X-ray pictures and the testimony relating thereto were erroneously received in evidence to the prejudice of the power company, for the reason that the X-ray pictures were not identified and no foundation laid for their admission, nor for the admission of the testimony relating thereto:

*Lake Shore Elec. Ry. Co.* v. *Hobart,* 13 C. C. (N. S.), 592, 22 C. D., 154; *Stevens* v. *Illinois Central Ry. Co.,* 306 Ill., 370, 137 N. E., 859; *United States* v. *La Favor,* 72 F., (2d) 827; *Ligon* v. *Allen,* 157 Ky., 101, 162 S. W., 536; *Wicks* v. *Cuneo-Henneberry Co.,* 319 Ill., 344, 150 N. E., 276; *Kavale* v. *Morton Salt Co.,* 329 Ill., 445, 160 N. E., 752; *Consolidated Coach Corp.* v. *Saunders,* 229 Ky., 284, 17 S. W. (2d), 233.

In Ohio the same rule is indicated in *Cleveland Ry. Co.* v. *Merk,* 124 Ohio St., 596, 180 N. E., 51, on page 604.

The judgment of the Common Pleas Court will be reversed and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

Lloyd and Carpenter, JJ., concur.